IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GELINDA J. HALLE,<br><br>    Plaintiff,<br><br> v.<br><br>BNSF RAILWAY COMPANY, ZACHARY THOMPSON, and AIDEN NELSON,<br><br>    Defendants. | 8:23CV213<br><br>MEMORANDUM<br>AND ORDER |

  On May 24, 2023, plaintiff Gelinda J. Halle ("Halle") brought this lawsuit (Filing No. 1) seeking compensation for injuries allegedly incurred as a result of a March 7, 2022, car accident in Omaha, Nebraska. That day, Halle and Lee Michel ("Michel")—both of whom were employed by defendant BNSF Railway Company ("BNSF")—were riding to a jobsite in a Toyota Sienna operated by Railcrew Xpress ("RCX") driver Dylan Stuart ("Stuart"). BNSF had contracted with RCX to provide transportation for its crew members.

  Stuart was driving the Toyota westbound on Nebraska Highway 2 with Michel in the passenger seat and Halle in the backseat. As they approached North Road, several cars lined up in the left lane waiting to turn left. Stuart moved into the rightmost lane to avoid the backed-up traffic, traveling at a speed of around forty-four to forty-five miles per hour.

  At the same time, defendant Aiden Nelson ("Nelson") was driving a Chevrolet Camaro and was stopped at a stop sign on North Road at the intersection with Highway 2. Nelson pulled out into the intersection to continue straight on North Road, and the front of the Toyota collided with the left side of the Camaro.

Halle blames both Stuart and Nelson for the accident. Her complaint sets forth four causes of action including a negligence claim against Nelson, claims for vicarious liability and negligent entrustment against defendant Zachary Thompson—the owner of the Camaro—and a Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, negligence claim against BNSF. BNSF answered (Filing No. 10) Halle's complaint on June 22, 2023, and pleaded several affirmative defenses, including that Halle was contributorily negligent. Since then, the parties have been engaged in discovery. A jury trial in this case is scheduled for December 2025.

Now before the Court is Halle's motion to exclude (Filing No. 102) the opinion of defendant BNSF's biomechanical expert, Brian Weaver ("Weaver"). Also before the Court is her motion for partial summary judgment (Filing No. 107) on elements of her FELA claim against BSNF. *See* Fed. R. Civ. P. 56(a). As described below, those motions are largely denied.

I.   **MOTION TO EXCLUDE**

Halle's arguments for the exclusion of Weaver's expert testimony fall into two categories. First, Halle asks the Court to exclude Weaver from testifying because—at the time of her motion—BNSF had failed to disclose details of his qualifications, publications, and past expert testimony as required by Federal Rule of Civil Procedure 26(a)(2)(B). Second, she asserts Weaver's opinions are inadmissible under Federal Rule of Evidence 702 because (1) he is unqualified to testify as to his conclusions that are medical in nature, (2) his methodology is unreliable, and (3) his opinions will not be helpful to the jury. The Court will address each argument in turn.

A.   **Inadequate Disclosure**

Rule 26(a)(2) requires parties to disclose "the identity of any witness it may use at trial to present" expert testimony. That disclosure must be "accompanied by a written report" prepared by the witness that contains:

2

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Those disclosures enable courts to "ensure fair and orderly proceedings free from prejudicial surprises." *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 699 (8th Cir. 2018); *see also Rembrandt Video Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) (explaining those disclosures "provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses" (quoting *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008)).

After multiple extensions, the deadline for completing expert disclosures in this case was September 30, 2024 (Filing No. 83). BNSF made its expert designations to Halle on July 17, 2024, describing its intention to have Weaver testify "regarding his biomechanical analysis of the accident" (Filing Nos. 60, 103-2). The parties agree that Weaver's report did not adequately disclose his qualifications, publications, and prior testimony. *See* Fed. R. Civ. P. 26(a)(2)(B)(iv), (v). According to Halle's counsel, they notified BNSF of this omission on November 25, 2024, at which time they emailed BNSF's counsel asking them to provide the missing information as soon as possible.

Having not heard back, Halle filed the present motion on December 2, 2024. She briefly asserts—along with her other arguments for exclusion—that Weaver's omissions render him unqualified to testify. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006) (describing the proponent's burden to "show by a preponderance of the evidence [] that the expert is qualified to render the opinion") (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993)). In doing so, she makes a

3

cursory reference in a footnote to Federal Rule of Civil Procedure 37(c)(1), which provides for sanctions for parties that fail to make the disclosures mandated by Rule 26(a). *See Vanderberg*, 906 F.3d at 702 ("The disclosure mandates in Rule 26 are given teeth by the threat of sanctions in Rule 37.")

BNSF opposes Halle's motion (Filing No. 105). In response, it promptly filed a "Supplemental Designation of Expert Witnesses" (Filing No. 104) purporting to cure the deficiency. Contrary to BNSF's representations, that submission is not a timely supplement pursuant to Rule 26(e). *See Petrone v. Werner Enters., Inc.*, 940 F.3d 425, 434 (8th Cir. 2019) (concluding a "revised report is not a Rule 26(e) supplement" where there was no evidence the party "learned of information that was previously unknown or unavailable to them"). The Court also shares Halle's concerns that the belated report (Filing No. 104-1) still fails to fulfill Rule 26(a)(2)(B)'s disclosure requirements because it does not appear to have been updated in nearly three years.

In her reply brief (Filing No. 115), Halle more heavily relies on Rule 37(c)(1) in seeking Weaver's exclusion. That subsection provides that a party that fails to disclose information required by Rule 26(a) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[1] Fed. R. Civ. P. 37(c)(1); *see also Goosen v. Minn. Dep't of Transp.*, 105 F.4th 1034, 1039 (8th Cir. 2024). Unless an exception applies or the Court

---

[1]The Eighth Circuit has stated that "Rule 37(c)(1) [only] addresses what to do if a party fails to disclose information as required by Rule 26(a) *and* attempts to use that information on a motion, at a hearing, or at a trial." *Petrone*, 940 F.3d at 435. At the time of Halle's motion, BNSF had not yet attempted to use the undisclosed information from Weaver. The Court finds the question of Rule 37(c)(1) sanctions is now properly presented given BNSF's reliance on the previously undisclosed information in opposing Halle's motion and clear intention to rely on that information to offer Weaver's testimony at trial. *See, e.g., Nielson v. Union Pac. R.R.*, No. 8:23CV21, 2024 WL 4458648, at *8 (D. Neb. Oct. 10, 2024) (finding Rule 37(c)(1) applied where the defendant had "clearly shown its intent to use the challenged surveillance video at trial by including it in its exhibit list and arguing for its admissibility at trial in response to a motion to exclude it").

finds, on a party's motion, that a lesser sanction is more appropriate, exclusion serves as a self-executing sanction. *See Vanderberg*, 906 F.3d at 702-703 (describing the district court's general discretion in deciding whether to exclude evidence); *cf. Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (explaining "the exclusion of evidence is a harsh penalty" that district courts should use sparingly (quoting *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 190 (8th Cir. 1995))).

Upon careful review of the record, the Court concludes the wholesale exclusion of Weaver is not warranted under Rule 37(c)(1) because BNSF's omissions were harmless. The disclosure of Weaver's report, though admittedly incomplete, provided notice of his general background, the opinions he intended to provide, and the basis for his conclusions, largely allowing Halle to prepare for that testimony. Moreover, before Halle's counsel notified BNSF of Weaver's incomplete report, months passed during which time remained to make disclosures under Rule 26(a)(2). Instead of asking for that information or moving to compel its disclosure, Halle's counsel waited over four months before raising the matter. *See Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 645 (8th Cir. 2022) (upholding the district court's refusal to exclude expert testimony where the contents of the expert's testimony were initially disclosed and, despite learning of an omission in the expert's report, the objecting party waited until trial to seek exclusion); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000) (finding exclusion "unjustified considering the harmless nature of the plaintiff's failure" and noting it was unlikely to cause "unfair surprise" since the party made insufficient disclosure "well before the deadline" with trial "a long way off").

Additionally, Halle does not even attempt to describe how she has been harmed by this seemingly inadvertent and relatively minor mistake. *See Wallace v. Pharma Medica Res., Inc.*, 78 F.4th 402, 408-409 (8th Cir. 2023) (finding there was no unfair surprise to prevent where the party seeking the exclusion of experts "fail[ed] to articulate how [the] nondisclosures were prejudicial"); *Martinez v. United States*, 33 F.4th 20, 34 (1st Cir.

5

2022) ("In fact, we have never affirmed an expert's preclusion when we were not persuaded by the proffered evidence of surprise or prejudice in the record." (internal quotation omitted)). The substance of Weaver's potential testimony remains unchanged. And as the parties note, Halle never sought to depose Weaver. The time to do so lapsed under the progression deadlines before Halle's counsel ever notified BNSF about the incomplete report. Overall, the circumstances make exclusion an extreme and unnecessary sanction here.

When wholesale exclusion is not warranted under Rule 37(c)(1), the proper course remains a bit hazy. As a general matter, the Court must usually find "good cause" to modify a scheduling order and permit out-of-time disclosures.[2] *See* Fed. R. Civ. P. 16(b)(4). There is some debate over how that general rule intersects with the more-specific provisions of Rule 37(c)(1). *See generally London v. Wash. Metro. Area Transit Auth.*, No. 8:21-cv-1497-AAQ, 2023 WL 3727058, at *4-*7 (D. Md. May 30, 2023) (thoroughly discussing the varied approaches to the issue). Faced with that uncertainty, many courts have considered the potential application of both rules in such circumstances. *See id.* at *5 (listing cases). Some have expressly concluded, however, that Rule 37(c)(1) permits the admission of improperly disclosed expert testimony "even if [a] party fails to show good cause to modify the case schedule." *Vinson v. Mich. Dep't of Corrs.*, No. 14-11130, 2018 WL 1312400, at *2 (E.D. Mich. Mar. 14, 2018) (collecting cases); *see also Garcia v. GGC, Inc.*, No. 17 CV 50003, 2019 WL 5586645, at *2 (N.D. Ill. July 16, 2019) (applying Rule 37(c) and not Rule 16(b)(4) because "federal courts should apply [a] specific provision" of the federal rules "over more general provisions").

---

[2] The failure to make such a showing was central to the Eighth Circuit's decision in *Petrone*. *See* 940 F.3d at 434-36. That analysis has little bearing here because the *Petrone* Court found Rule 37(c)(1) entirely inapplicable to the matter. *See id.* at 434-35. The Eighth Circuit does not seem to have addressed the relevance of Rule 16(b)(4) in circumstances where, as here, Rule 37(c)(1) directly governs.

Either way, the Court finds there is good cause here to allow the minimal late disclosures supplementing Weaver's information under Rule 16(b)(4). "A 'district court has broad discretion in establishing and enforcing the deadlines.'" *Petrone*, 940 F.3d at 434 (quoting *Marmo*, 457 F.3d at 749); *see also United States v. Smith*, 422 F.3d 715, 725 (8th Cir. 2005) (stating "the district court has broad discretion to control the scheduling of events in matters on its docket" and grant continuances (internal citation omitted)). A party's "diligence in attempting to meet the case management order's requirements is the 'primary measure' of good cause" under Rule 16(b)(4). *Midwest Med. Sols., LLC v. Exactech U.S., Inc.*, 95 F.4th 604, 607 (8th Cir. 2024) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)); *see also Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 717 (8th Cir. 2008) (explaining that prejudice may also be a relevant factor in some cases). "Where there has been no change in the law, no newly discovered facts, or any other changed circumstance . . . after the scheduling deadline [has passed], then [the Court] may conclude that the moving party has failed to show good cause." *Midwest Med. Sols.*, 95 F.4th at 607 (quoting *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012)).

BNSF timely disclosed the bulk of its expert disclosures required by Rule 26(a). Not too long after learning of its omission and with plenty of time before trial, BNSF attempted to supplement Weaver's report and cure its errors. Beyond this omission, both parties appear to have diligently pursued this case and tried to comply with the scheduling order's deadlines.

Given that history and the lack of prejudice, the Court will consider Weaver's supplemental information. BNSF is ordered to promptly submit a report from Weaver that is fully compliant with Rule 26(a).

B. Admissibility

Halle's other arguments for the exclusion of Weaver's testimony invoke the Court's usual gatekeeping function with respect to expert testimony. *See* Fed. R. Evid.

7

702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (discussing *Daubert* and concluding the court's "gatekeeping obligation . . . applies to all expert testimony"). Federal Rule of Evidence 702 requires that proponents of expert testimony demonstrate "that it is more likely than not that" the expert's "knowledge will help the trier of fact." The proponent must also show that their "testimony is based on sufficient facts or data" and is the product of the "reliable application" of "reliable principles and methods" to the facts of the case. Fed. R. Evid. 702. The Court has broad discretion in deciding whether those requirements are met and employs a "flexible and fact specific" inquiry in doing so. *Russell v. Whirlpool Corp.*, 702 F.3d 450, 455-56 (8th Cir. 2012) (quoting *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2000)).

Rule 702 is one "of admissibility rather than exclusion." *S&H Farm Supply, Inc. v. Bad Boy, Inc.*, 25 F.4th 541, 551 (8th Cir. 2022) (quoting *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1298 (8th Cir. 1997)). "As long as the expert's scientific testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Id.* (quoting *Daubert*, 509 U.S. at 596).

Weaver is a licensed professional engineer and holds a master's degree in Engineering Mechanics. Among other subjects, Weaver specializes in biomechanics and accident reconstruction. His peer-reviewed publications include several articles exploring the impact of vehicular accidents on various parts of an occupant's body. He also serves as an adjunct professor in the Biomedical Engineering Department at Lawrence Technological University and as a member of the university's Biomedical Engineering Advisory Board.

According to his report, Weaver plans to testify that:

1. The Toyota Ms. Halle was a passenger in experienced a frontal collision event.

8

2. The Toyota experienced a maximum change in velocity (Delta-V) of 8.5 mph or less.

3. The Principal Direction of Force (PDOF) was directed at 11 o'clock.

4. The mechanism for traumatic (acute) tearing of the rotator cuff involves substantial motion of the humerus relative to the glenoid.

5. The subject collision would not result in occupant kinematics consistent with excessive or non-physiologic rotation at the shoulder joints for a properly restrained occupant.

6. Tearing of the shoulder's tendonous structures has been associated with levels of axial loading that occur during falls on an outstretched hand (FoOSH).

7. The subject incident did not provide the biomechanical mechanisms required to traumatically tear rotator cuff tendons similar to what Ms. Halle was diagnosed with.

8. The axial loading experienced by Ms. Halle's right shoulder joint during the subject incident was considerably less than the axial load associated with a fall on an outstretched hand and generally consistent with previously reported non-injurious activities of daily living.

9. Mr. Nelson had more than 5.0 seconds to observe and detect the Toyota changing lanes to pass the stopped vehicles.

10. The subject incident would not have occurred had the Chevrolet Camaro properly yielded the right of way to the Toyota.

Halle asserts the Court should exclude Weaver's testimony as unhelpful and unreliable. She argues that Weaver's conclusions as to the "nature and mechanisms of [her] shoulder injury" (numbers four through eight) constitute medical opinions that "go well beyond" his qualifications. Halle also questions the reliability of Weaver's other conclusions about the accident, criticizing—among other things—his use of the MAthematical DYnamic MOdels ("MADYMO")[3] software package and a particular file

---

[3] According to Weaver, MADYMO "is a software package that combines multi-body systems connected by kinematic joints and finite element techniques to quantify the

type of the dash-cam video. Finally, she states Weaver's testimony is further unhelpful since his opinions about her injury "are based on general forces from car wrecks" and do not describe specific "underlying information" used to reach those conclusions.

When not belied by the record, Halle's criticisms are unpersuasive. To start, Weaver's training and experience qualifies him to testify about the accident and the likelihood that it caused Halle's diagnosed injuries. The Court's duties under Rule 702 include "ensuring that the [expert's] testimony does not exceed the scope of the[ir] expertise." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001). But so long as an expert's opinion has a sufficient basis in their specialized knowledge, any gaps in their "qualifications or knowledge generally go to the weight of" their testimony rather than admissibility. *Am. Auto Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 726 (8th Cir. 2015) (quoting *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006)).

As relevant here, the field of biomechanics involves "the mechanics of biological and especially muscular activity." *Biomechanics*, *Merriam-Webster's Dictionary*, https://www.merriam-webster.com/dictionary/biomechanics (last visited March 26, 2025); *see also Biomechanics*, *New Oxford American Dictionary* 169 (3d ed. 2010) (defining biomechanics as "the study of the mechanical laws relating to the movement or structure of living organisms"). Because that field naturally overlaps with medicine to some degree, the proper scope of biomechanical testimony is frequently a topic of debate in personal-injury cases. *See, e.g., Smesler v. Norfolk S. Ry.*, 105 F.3d 299, 305 (6th Cir. 1997), *abrogated on other grounds by Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 515 (6th Cir. 1998); *Penn. Trust Co. v. Dorel Juv. Grp., Inc.*, 851 F. Supp. 2d 831, 838 (E.D. Pa. 2011); *Bowers v. Norfolk S. Corp.,* 537 F. Supp. 2d 1343, 1376-78 (M.D. Ga. 2007).

---

dynamic behavior of physical systems with an emphasis on occupant dynamics during vehicle collisions."

As Weaver and Halle both acknowledge, some courts have drawn the line at diagnostic conclusions. *See Smesler*, 105 F.3d at 305 (6th Cir. 1997). Those courts have concluded that biomechanical experts "are qualified to determine what injury causation forces are in general and can tell how a hypothetical person's body will respond to those forces, but [may] not [be] qualified to render medical opinions regarding the precise cause of a specific injury." *Id*. *But cf. Laski v. Bellwood*, No. 99-1063, 2000 WL 712502, at *4 (6th Cir. 2000) (acknowledging cases since *Smesler* "have given a decidedly more liberal construction of the rules concerning admission of expert" testimony). Most courts have permitted otherwise admissible causation testimony, though, finding any weaknesses in the expert's qualifications go more to the weight of their testimony than admissibility. *See, e.g.*, *Weber v. TMG Logistics, Inc.*, 805 F. App'x 463, 466 (9th Cir. 2020) (unpublished memorandum opinion) (concluding a district court could admit a biomechanical expert's causation testimony so long as it was reliable); *Penn Trust*, 851 F. Supp. 2d at 838 ("A medical degree is not a prerequisite to qualification as an expert capable of testifying as to the cause of a person's injuries."); *see also Smith v. BMW N. Am., Inc.*, 308 F.3d 913 (8th Cir. 2002) (concluding "[t]he fact that experts in other fields"—including biomechanics—"might also be able to form opinions regarding the cause of" an injury did not render a medical expert's testimony unhelpful); *Laski*, 2000 WL 712502 at *4 (discussing the irony of limiting causation testimony from biomechanical experts lacking medical experience while allowing such testimony from medical experts lacking biomechanical experience).

Here, conclusions four, five, and six of Weaver's report fall squarely within his expertise in biomechanics. Those opinions discuss, in general terms, the mechanics involved in certain muscular injuries and the likely impact of the forces of the subject crash on a hypothetical person. *See Laski*, 2000 WL 712502 at *4 (finding testimony regarding "the forces necessary to produce certain types of back injuries, and the forces at work in a rear-impact car accident" fell "squarely within the allowable biomechanical testimony"); *Bowers*, 537 F. Supp. 2d at 1377 (explaining "biomechanical engineers

11

typically are found to be qualified to render an opinion as to the forces generated in a particular accident and the general types of injuries those forces may generate").

Weaver's seventh and eighth conclusions, though falling closer to the line of causation testimony courts have at times found questionable, are admissible under the specific circumstances of this case. Weaver concedes he will "not make any diagnoses" but will "rel[y] upon the diagnoses documented by the medical doctors" in Halle's records. Importantly, he limits his analysis and conclusions to whether the "mechanics required to cause [Halle's] injuries were" present in the subject collision. *Porter v. Cuyahoga County*, No. 1:19CV2612, 2022 WL 875252, at *4 (N.D. Ohio March 24, 2022) (admitting such testimony from a biomechanical expert as distinct from the testimony disallowed in *Smelser*); *see also Berner v. Carnival Corp.*, 632 F. Supp. 2d 1208, 1212-13 (S.D. Fla. 2009) (distinguishing an expert's testimony over whether the force of an accident "was sufficient to have caused" the plaintiff's diagnosed injury from potentially inadmissible testimony "about whether the [plaintiff] has suffered" that injury "or about the cause thereof"). Such testimony is admissible based on Weaver's extensive training and experience in the field of biomechanics and reliable application of biomechanical methods to the facts of this case.

Halle's other arguments likewise do not warrant barring Weaver's testimony. The bulk of Halle's complaints about Weaver's analysis—including her opinion that he could have used more precise video files and vehicle scans—go to the weight of Weaver's testimony, not its admissibility. *See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 777-78 (8th Cir. 2021). The Court cannot say here that Weaver's analysis is so speculative or "fundamentally unsupported that it can offer no assistance to the jury." *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988).

Further, Halle's blanket assertions about the reliability of Weaver's analysis fail to recognize the flexible, case-specific nature of the Court's inquiry. District courts have "considerable leeway" in assessing the reliability of expert testimony in the context of

each case. *Kumho Tire*, 526 U.S. at 141, 150. Sometimes, the factors set out in *Daubert*, which include a theory's testability and its rate of error, are relevant to the Court's analysis. *See* 509 U.S. at 593-95; *see also Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006). But those factors "do *not* constitute a 'definitive checklist or test'" and are not determinative of the reliability of expert testimony in every case. *Kumho Tire*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 593).

From the Court's review, it appears that Weaver's analysis employs "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Am. Auto Ins.*, 783 F.3d at 722 (quoting *Kumho*, 526 U.S. at 152). He has reasonably applied sufficiently reliable methods of biomechanical analysis to the facts of this case to reach conclusions that may be helpful to the jury.

In all, Halle has provided no persuasive reason for the Court to exclude Weaver's testimony. Instead, she will have to vigorously cross-examine and present contrary evidence—including from her own biomechanical expert—to address her concerns and critique Weaver's opinions. *See Daubert*, 509 U.S. at 596 (calling those the "traditional and appropriate means of attacking" admissible evidence).

## II.    MOTION FOR PARTIAL SUMMARY JUDGMENT

Next, Halle asserts she is entitled to a summary-judgment finding that (1) BNSF "violated its duty to provide a reasonably safe workplace, based on uncontroverted evidence of the negligence of" Stuart and (2) its "breach of its duty caused" an injury. She also claims BNSF has no evidence to support its contributory-negligence defense.

Under Rule 56(a), the Court will "grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A moving party may demonstrate its entitlement to summary judgment on a matter on which the nonmoving party "'will bear the burden of proof at trial'" by "produc[ing] evidence negating an essential element of" that claim or

"show[ing] that the nonmoving party does not have enough evidence . . . to carry its ultimate burden of persuasion." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). On the other hand, a genuine dispute for trial exists if the record on summary judgment "is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. 2022) (quoting *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012)).

In determining whether summary judgment is proper, the Court views the genuinely disputed evidence in the light most favorable to the nonmovant and draws all reasonable inferences in their favor. *See Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr. of Richmond, Inc.*, 34 F.4th 649, 652 (8th Cir. 2022). It will "not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (quoting *Great Plains Real Est. Dev., LLC v. Union Cent. Life Ins.*, 536 F.3d 939, 943-44 (8th Cir. 2008)).

FELA provides that "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 691 (2011) (quoting 45 U.S.C. § 51). Though the statute borrows from the common-law principles of negligence, *Consol. Rail Corp. v Gottshall*, 512 U.S. 532, 543-44 (1994), its causation standard is uniquely broad, *CSX Transp.*, 564 U.S. at 692. A FELA plaintiff must merely demonstrate that "employer negligence played any part, even the slightest, in producing [their] injury." *CSX Transp.*, 564 U.S. at 692 (quoting *Rogers v. Mo. Pac. R.R.*, 352 U.S. 500, 506 (1957)); *cf. Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 271 (6th Cir. 2007) (noting "a plaintiff cannot benefit from FELA's relaxed causation standard unless he can prove that the employer was negligent in the first place").

By design, juries have a particularly important role to play in FELA cases. *See Francois v. Metro-North Commuter R.R.*, 107 F.4th 67, 71 (2d Cir. 2024) (discussing the "strong federal policy in favor of letting juries decide these cases"). As such, the Court liberally construes the "right of the jury to pass on factual issues" such as a party's negligence and causation. *Francois*, 107 F.4th at 74 (quoting *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 826 (2d Cir. 1994)); *see also Rogers*, 352 U.S. at 506 (describing Congress's intent to leave the question of "whether employer fault played any part in the employee's mishap" to the fact-finders in FELA cases); *Johnson v. Richardson*, 701 F.2d 753, 758 (8th Cir. 1983) ("The fact, cause, and measure of damages in a negligence action are questions for the jury to resolve.").

Viewed in BNSF's favor, the record presented by the parties does not render those questions so clearly free from doubt here as to warrant taking them from the jury. Reasonable jurors may come to differing conclusions in considering that evidence, including the video footage from the inside of the Toyota leading up to the crash. The potential fault of Stuart and his causation of Halle's alleged injuries are for the fact-finder to determine.

However, summary judgment is proper on BNSF's contributory-negligence defense. Presented with Halle's arguments for summary judgment, BNSF failed to respond at all in support of its claim. *See Satcher v. Univ. of Ark. At Pine Bluff Bd. of Trs.*, 558 F.3d 731, 734-35 (8th Cir. 2009) (explaining a party's "failure to oppose a basis for summary judgment constitutes waiver of that argument"); *see also* NECivR 56.1(b)(3) (stating a party's failure to oppose summary judgment "*alone* is not considered confession of a motion" but that they will not be excused from meeting their burden under Rule 56); *Johnson v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 524 (8th Cir. 2020) (concluding a party cannot survive summary judgment when their "argument . . . does not cite to evidentiary materials setting out specific facts" showing a genuine

dispute for trial). Nor does the Court see much—if anything—in the record that BNSF could rely on to do so.

In light of the foregoing,

IT IS ORDERED:

1. Plaintiff Gelinda J. Halle's Motion to Exclude (Filing No. 102) is denied.
2. On or before April 9, 2025, defendant BNSF Railway Company shall submit a report from expert Brian Weaver that is fully compliant with Rule 26(a).
3. Halle's Motion for Partial Summary Judgment (Filing No. 107) is granted as to BNSF's contributory-negligence defense but otherwise denied.

Dated this 31st day of March 2025.

                                  BY THE COURT:

                                  Robert F. Rossiter, Jr.
                                  Chief United States District Judge